IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE,
AT CHATTANOOGA

ARCH WOOD PROTECTION, INC.,　　　　　　　)
　　　　plaintiff,　　　　　　　　　　　　　)　　　　Case No. 1:10-CV-282
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　)　　　　Collier/Carter
　　　　　　　　　　　　　　　　　　　　　)
FLAMEDXX, LLC.,　　　　　　　　　　　　　)
　　　　defendant.　　　　　　　　　　　　)

REPORT and RECOMMENDATION

I. Introduction

Defendant FlamedXX, LLC's Motion to Set Aside Default (Doc. 16) is pending before
the undersigned Magistrate Judge having been referred for a report and recommendation by the
District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Because I find that FlamedXX,
LLC (FlamedXX) was properly served and its registered agent for defendant intentionally
evaded service of process, it is RECOMMENDED that FlamedXX's motion to set aside the
default entered against it be DENIED.

II. Background

A. Procedural Background

Arch Wood Protection, Inc. (Arch Wood) filed this breach of contract action against
FlamedXX on October 13, 2010. Before FlamedXX was served, Arch Wood amended the
complaint. Subsequently, as will be discussed in greater detail in this report and
recommendation, Arch Wood sent by certified mail several copies of the summons and amended
complaint to FlamedXX's registered agent, Patrick Thompson. After FlamedXX did not answer
the complaint or respond in any way, Arch Wood applied for entry of default on February 11,
2011. The Clerk of the Court entered default against FlamedXX on March 3, 2011 on the

1

ground that FlamedXX had been duly served on December 10, 2010 and December 29, 2010 and no response had been filed. [Doc. 10]. Arch Wood then moved for default judgment. [Doc. 11]. This motion was referred to the undersigned Magistrate Judge and an evidentiary hearing was set on Arch Wood's motion, but before the hearing was held, FlamedXX moved to set aside the default. [Doc. 16]. The District Court referred this motion to the undersigned and held an evidentiary hearing on the defendant's Motion to Set Aside Default on Wednesday, February 8, 2012.

### B. Relevant Facts

There are eleven members of FlamedXX, LLC including Patrick Thompson, Sr. and his son who are together the majority owners of the company. His son is President and CEO and handles daily operations. Mr. Thompson is 66 years old and goes to FlamedXX's place of business about once a month. He also uses his residence as a home office and meets occasionally with clients. He has been the registered agent in the State of Tennessee for FlamedXX since 2008. FlamedXX was first registered with the Tennessee Secretary of State in 2004.

FlamedXX owns a formula for a fire retardant coating which is applied to oriented strand board (OSB) and employs a unique application process to coat the OSB with its fire retardant material. FlamedXX considers the coating process and the formula to be trade secrets and is currently in the process of getting a patent both for the coating process and the coating itself. Since June 2009, FlamedXX's principal place of business has been a warehouse at 400 Davidson Street in Nashville, Tennessee. The warehouse is located in a huge building near the Cumberland River and serves as the place of business for eight to ten businesses including FlamedXX .

Jay Bowen, an attorney in Nashville who has a practice in intellectual property law, had advised FlamedXX that it should keep its warehouse secure in order to protect both its secret formula and its secret application process. Consequently, FlamedXX had installed a lock on its door with a buzzer in order to gain access.

In May 2009, FlamedXX entered into a contract with Arch Wood whereby Arch Wood agreed to provide a certain amount of OSB to be coated in FlamedXX's special fire retardant coating. In return for Arch Wood's providing a certain amount of business, FlamedXX agreed that it would do no business with anyone else besides Arch Wood. Pursuant to paragraph 12.2 of this contract, all written communications to FlamedXX were to be sent to 2940 Foster Creighton Drive, Nashville which was the address of FlamedXX's principal place of business. (Ex. D 3). However, FlamedXX moved to 400 Davidson Street in June 2009 after it became apparent that FlamedXX needed more space.

In the Fall of 2010, the contract between the parties was terminated, though the parties do not agree as to who terminated first or who is at fault for the termination of the contract.

According to Mr. Thompson, during the course of the contract, Arch Wood provided less than fifteen percent of the business that it had promised to provide. After termination, the parties attempted to settle the dispute arising from the termination of the contract. On October 15, 2010, Attorney Mark Smith of Husch Blackwell LLP, counsel for Arch Wood, sent an email to Attorney Jay Bowen advising Bowen that a complaint against FlamedXX had been filed in federal court but a summons had not been issued and he hoped the matter could be resolved. (Ex. D 1). Attorney Smith attached a copy of the complaint filed in federal court to the October 15, 2010 email he sent to Bowen. Smith further stated, "[t]o that end, I will not serve the

3

complaint for the present. Please discuss this matter with FlamedXX and let me know if FlamedXX is willing to work toward an amicable settlement." (Ex. D 1).

On November 30, 2010, Attorney Smith sent a letter via fax to Attorney Bowen stating he (Smith) had not received any response to his emails to negotiate settlement of this matter, and Smith asked Bowen if he represented FlamedXX in the action filed in federal court. (Ex. D 2). Smith also noted that a settlement conference was set for the following day, December 1, 2010 at 12 pm and he wanted Bowen to respond to him in writing and tell him who planned to attend the settlement conference as he had been informed that Patrick Thompson intended to come without counsel. Smith stated if he had not heard from Bowen by 4 pm that afternoon, the settlement conference would be cancelled and Arch Wood would proceed with its lawsuit against FlamedXX. (Ex. D 2).

In response to the fax, Attorney Bowen telephoned Smith the same day and told him Thompson wanted the meeting to be conducted between businessmen only, and he (Bowen) would not attend the settlement conference the next day. Bowen told Smith he had not been retained to represent FlamedXX in this lawsuit Arch Wood had filed in federal court nor did he have the authority to accept service. This was the last communication Bowen had with Smith.

Also on November 30, 2010, Rodney Hardison of Arch Wood emailed Pat Thompson regarding a potential settlement between Arch Wood and FlamedXX. In the email, Mr. Hardison told Mr. Thompson:

> As I made plain to you previously, and as you agreed, December 1, 2010 is the deadline for us to come to an agreement on a number and schedule for payment. Acceptance of the settlement must be confirmed in writing. If we do not have an agreement by the close of business tomorrow at 5 pm EST, Arch will amend its complaint and serve it as soon as possible.

4

> Since you have stated that your counsel will not be present, and since you will not agree to the participation of Arch's counsel in the absence of your counsel, the face to face settlement hearing scheduled for tomorrow in Chattanooga is canceled.

(Ex. P 6). As no settlement was reached, Arch Wood subsequently amended its complaint and began the process of attempting service on FlamedXX by serving FlamedXX's registered agent, Patrick Thompson, Sr.

On December 10, 2010, Arch Wood's attorneys, Husch Blackwell, attempted to serve FlamedXX with a summons and complaint by certified mail by sending it to FlamedXX's registered agent, Patrick Thompson at 2030 Gallnaitte in Nashville, Tennessee, the address listed with the Tennessee Secretary of State as the address for FlamedXX's registered agent. The summons and complaint was returned by the United States Postal Service and marked "no such street." (Ex. P 8). At the evidentiary hearing, Thompson testified there must have been a typographical error by the Secretary of State because he had given his address as the registered agent for FlamedXX as 2030 Galbraith Road in Nashville, Tennessee. This address was Thompson's residence until he moved to a new residence, 700 Brass Lantern Place, in Nashville in November 2009.

On December 29, 2010, Arch Wood's attorneys again attempted to serve FlamedXX through its registered agent by certified mail to Patrick Thompson at 2030 Gallnaitte, Nashville, Tennessee. The Postal Service forwarded the service packet to FlamedXX at 566 Mainstream, Nashville, Tennessee. (Ex. P9). The service packet was returned to Husch Blackwell by the Postal Service marked "Return to Sender, Not Deliverable As Addressed, Unable to Forward." (Ex. P 9). Thompson testified at the hearing that FlamedXX's principal place of business had been at 566 Mainstream Dr. in Nashville until 2008 when FlamedXX moved its operations to

5

2940 Foster Creighton Dr. in Nashville and that June 2009, FlamedXX moved its operations to 400 Davidson Street in Nashville.

On January 25, 2011, Arch Wood's attorneys sent a summons and complaint by certified mail to the Tennessee Secretary of State asking the Tennessee Secretary of State to accept service on behalf of FlamedXX and to attempt service on FlamedXX pursuant to Tenn. Code. Ann. § 48-208-104(b). (Ex. P 2A). The Tennessee Secretary of State attempted service on FlamedXX at 3100 W. End Ave. in Nashville but the packet was returned as "Attempted-Not Known." (Ex. P 2). Thompson testified FlamedXX had had an office at 3100 W. End Ave. until 2005.

On February 3, 2011, Arch Wood's attorney sent another summons and complaint by certified mail to FlamedXX in care of Patrick Thompson at 400 Davidson Street, Nashville, TN 37123. This package was also returned and marked, "Returned to Sender, Unclaimed." The zip code was scratched out and next to it was handwritten "37213." Thompson testified that FlamedXX rarely checked its mail at the mailboxes provided for tenants at 400 Davidson Street.

On February 11, 2011, Husch Blackwell sent three summonses and complaints by certified mail to FlamedXX: one to 400 Davidson Street, Nashville; one to 3100 West End Ave, Nashville; and one to P.O. Box 332036, Nashville. The first packet was marked "Return to Sender, Unclaimed." (Ex. P 10). The second was marked "Not Here, Refused by Occupant," (Ex. P 11), and the third to P.O. Box 332036 was marked "Unclaimed." (Ex. P 12). At the hearing, Thompson testified P.O. Box 332036 was his personal P.O. Box; therefore, he stated, he did not think the Post Office would deliver a letter to FlamedXX at that address. But Thompson also admitted sending to Randy Hardison of Arch Wood emails which gave P.O. Box 332036 as a valid FlamedXX address. (*See* Ex. P 12A).

6

In January 2011, after Arch Wood's attempts at certified mail were returned, Arch Wood's attorneys retained Ricky Cooper, a private investigator and process server, to locate Mr. Thompson and serve him as the registered agent for FlamedXX. On January 17, 2011, Cooper drove to the warehouse at 400 Davidson Street. He saw the FlamedXX sign located on the side of the building but he could not find the entrance. He called his client for more information and returned to the building. He went into an entrance where someone who appeared to be with a plumbing company directed him upstairs to what he said was the FlamedXX entrance. Cooper went where directed and entered an office area with no signage where he could see three men in the back of the warehouse through a glass window. Someone eventually came out to the front office area, and Cooper asked him if he knew Patrick Thompson. The person replied, "don't know him, never heard of him" and walked out.

After he could not contact anyone with FlamedXX at 400 Davidson Street, Cooper telephoned Patrick Thompson. Thompson testified he remembered speaking with Cooper who said he had paperwork to give him and he assumed Cooper was a process server. According to Thompson, he told Cooper he was in Chattanooga and to call him in a few days when he returned, but Cooper never called him back. Thompson testified he does not recall having anymore contact with Cooper.

Cooper's version of events is very different from Thompson's. According to Cooper, he spoke with Thompson and told him he was a process server and that he had paperwork to give him. Thompson asked him if the paperwork was for him or FlamedXX. Cooper responded he had not read the paperwork, he just needed to deliver it. Thompson told him he was in Chattanooga but would return in a few days and would call him, but Thompson did not call.

After his initial conversation with Thompson, Cooper spoke with Thompson an additional three or four times between January 17 to February 1, 2011. In one instance, Cooper told Thompson that he was very near 132 Ensworth Avenue in Nashville which he believed to be Thompson's home address,[1] and Cooper offered to meet Thompson there. Thompson stated that he no longer lived at that address and abruptly hung up the phone. On January 31, 2011, Cooper spoke with Thompson who agreed to set up a meeting with him the following day to obtain the paperwork. Thompson told Cooper to call him at 11am the next day and they would arrange to meet. The next day, February 1, 2011, at 11 am, Cooper called Thompson but Thompson did not answer. Cooper left a message but Thompson never called back. Cooper testified he has served over fifty registered agents during his career as a process server. Approximately half of those have been served at their places of business and the other half at their residences, and he has never had so much difficulty serving a registered agent.

As of the date of the evidentiary hearing, February 8, 2012, FlamedXX and Thompson had still not updated Thompson's address as FlamedXX's registered agent. His address was still listed with the Secretary of State as 2030 Gallnaitte in Nashville. (Ex. P 4). According to the Secretary of State's records, FlamedXX notified the Secretary of State that its principal place of business had changed from 3100 West End Avenue to 400 Davidson Street on June 1, 2011. (Ex. P 4).

---

[1] Thompson testified at the evidentiary hearing that he lived at 132 Ensworth Dr. in Nashville until February 2008. He then moved to 2030 Galbraith Road where he resided until November 2009. From November 2009 until February 2011,Thompson resided at 700 Brass Lantern in Brentwood, Tennessee. Thompson currently resides at 103 West End Close where he has been since November 2009. He has maintained and does maintain a home office in each residence during the time he has or does occupy it.

Between December 2010 and February 2011, Rodney Hardison and Thompson exchanged at least four emails concerning warranty work for product already out in the field. However, at no time did Hardison mention the lawsuit Arch Wood had filed against FlamedXX or that Arch Wood was attempting serve FlamedXX with the amended complaint and summons in that lawsuit. Thompson further testified that as far as he knew, his current home address and phone number were always listed in the Nashville phone book; however, at least one source, www.whitepages.com, on February 7, 2012, had Thompson's address listed as 132 Ensworth Avenue, a residence he has not occupied since February 2008. (Ex. P 21). Thompson also testified he has never refused to accept a certified letter or tried to evade service.

According to Thompson, he first learned Arch Wood had been trying to serve FlamedXX with a summons and complaint when he received the Court's notice of an evidentiary hearing on May 23, 2011, on Arch Wood's motion for default judgment to determine damages. The Court's notice, which was sent on May 10, 2011 in an envelope indicating the letter was from the United States District Court, arrived at the 400 Davidson Street address by regular mail. As soon as Thompson received the notice of hearing, he contacted Jay Bowen who directed him to his current attorney, Gary Patrick. Mr. Patrick entered an appearance in this case on May 18, 2011 and filed the pending motion to set aside default on May 20, 2011.

In regard to the preservation of evidence, an issue which is relevant to this motion, Thompson testified he has never put a litigation hold in place but FlamedXX is a small business and it does not destroy documents. One computer in the office was ruined about five months ago by rain after the roof leaked, but he does not know what was on the computer. FlamedXX has the same employees it had two years ago.

9

FlamedXX asserts the default entered against it in this action should be set aside for two reasons. First, FlamedXX was never properly served, and second, even if FlamedXX was properly served, FlamedXX deserves to have the default set aside pursuant to the three part test articulated by the Sixth Circuit in *Dassault Systems, SA v. Childress,* 663 F.3d 832, 840-41 (6th Cir. 2011; *United States v. $22,050.00 in U.S. Currency,* 595 F.3d 318, 324 (6th Cir. 2010); and *Shepard Claims Servs, Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986). The undersigned will address each argument in turn.

### A. *Obtaining Service on FlamedXX*

Defendant is correct that if it was not properly served with the summons and complaint in the instant case, the entry of default must be set aside. *O.J. Distributing, Inc. v. Hornell Brewing Company, Inc.*, 340 F.3d 345, 353 (6th Cir. 2003) ("Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties. Therefore, if service of process was not proper, the court must set aside entry of default") (internal citations omitted.)

When Arch Wood applied for the default on February 11, 2011, it stated in its application that it had served FlamedXX's registered agent on December 10, 2010 and December 29, 2010. (Doc. 9, Page ID # 65, par. 3). Its application also stated it had obtained a special process server who was unable to effect personal service because the registered agent had evaded service (Doc. 9, Page ID # 66, par. 4) and that it had served FlamedXX via the Tennessee Secretary of State on January 25, 2011. (Doc. 9 Page ID # 66, par. 5). In support of its application for default, Arch Wood supplied an affidavit from an agent of the Tennessee Secretary of State averring the Secretary of State had received certified copies of the summons and complaint in this case on

behalf of FlamedXX on January 25, 2011. (*See* Feb. 1, 2011 Affidavit and Endorsement, Doc. 9-3) Subsequently, on March 3, 2011, more than 21 days after service on the Secretary of State, the Clerk of the Court entered default on the ground that the "summons and first amended complaint were duly served upon the defendant, FlameDXX, LLC on December 10, 2010 and December 29, 2010, and no answer or other pleading has been filed by said defendant as required by law." (Doc. 10).

Fed. R. Civ. P. 4 provides for a variety of means by which a defendant may be properly served with process including by "following state law for serving a summons in an action brought in a court of general jurisdiction in the state where the district court is located or where service is made…." Fed. R. Civ. P. 4(e)(1). In Tennessee, a domestic or foreign corporation including a limited liability corporation may be served by delivering a copy of the summons and complaint to an officer or managing agent or an agent authorized by law to receive service on behalf of the corporation. Tenn. R. Civ. P. 4.04(4). FlamedXX is a limited liability corporation doing business in Tennessee, and, as such, it must have a registered agent to accept service of process on its behalf and it must continuously maintain a valid address for the registered agent with the Tennessee Secretary of State. Tenn. Code Ann. § 48-208-104(a) and Tenn. Code Ann. § 48-208-101 .[2]

---

[2] Tenn. Code Ann. § 48-208-101(a) provides:
(a) Registered office and agent. Each foreign and domestic LLC must continuously maintain in this state:

(1) A registered office that may be the same as any of its places of business; and

(2) A registered agent, who may be: an individual who resides in this state, a domestic corporation, a not-for-profit domestic corporation, an LLC, or a foreign corporation, not-for-profit foreign corporation, or foreign LLC authorized to transact business in this state. The registered agent must maintain a business office that is identical with the registered office.

11

A corporation may also be served by certified mail according to those specifications provided in Tenn. R. Civ. P. 4.04(10) which states in relevant part:

> Service by mail of a summons and complaint upon a defendant may be made by … the plaintiff's attorney …. After the complaint is filed, the clerk shall, upon request, furnish the original summons, a certified copy thereof and a copy of the filed complaint to the … plaintiff's attorney … for service by mail. Such person shall send, postage prepaid, a certified copy of the summons and a copy of the complaint by registered return receipt or certified return receipt mail to the defendant. If the defendant to be served is an … entity covered by subparagraph … (4) … of this rule, the return receipt mail shall be addressed to an individual specified in the applicable subparagraph. _Service by mail shall not be the basis for the entry of a judgment by default unless the record contains a return receipt showing personal acceptance by the defendant or by persons designated by Rule 4.04 or statute._ If service by mail is unsuccessful, it may be tried again or other methods authorized by these rules or by statute may be used.

Consequently, service by mail cannot serve as the basis for a default judgment unless there is a return receipt showing personal acceptance by the defendant or by persons designated by Rule 4.04 or by statute. When Arch Wood's counsel attempted to serve FlamedXX by certified mail on December 10 and December 29, 2010, the Postal Service returned the mail. The first mailing was returned as "no such address" and the second was returned as ""Return to Sender, Not Deliverable As Addressed, Unable to Forward." Arch Wood also attempted to serve FlamedXX's registered agent by certified mail on February 3, 2011 and this service packet was returned as "unclaimed." Despite the lack of personal acceptance of these service packets, Arch Wood argues the February 3, 2011 certified mailing, which occurred more than 21 days before default was entered on March 3, 2011, constitutes valid service of process based on Tenn. R. Civ. P. 4.04(11). Rule 4.04 states:

---

Tenn. Code Ann. § 48-208-104(a) provides:

Agent for service of process. A foreign or domestic LLC's registered agent is the LLC's agent for service of process, notice, or demand required or permitted by law to be served on the LLC.

12

> When service of a summons, process, or notice is provided for or permitted by registered or certified mail under the laws of Tennessee and the addressee or the addressee's agent refuses to accept delivery and it is so stated in the return receipt of the United States Postal Service, the written return receipt if returned and filed in the action shall be deemed an actual and valid service of the summons, process, or notice. Service by mail is complete upon mailing. _For purposes of this paragraph, the United States Postal Service notation that a properly addressed registered or certified letter is "unclaimed," or other similar notation, is sufficient evidence of the defendant's refusal to accept delivery._

(Emphasis added). Notwithstanding Rule 4.04(11), Rule 4.04(10) singles out service in the default judgment context as requiring special treatment; it requires personal acceptance. Consequently, the February 3, 2011 service is not a valid service of process for the purpose of entering a default judgment in this case.

The undersigned now turns his attention to the January 25, 2011 service on the Tennessee Secretary of State. Tenn. Code Ann. § 48-208-104(b) allows a party to service the Secretary of State in lieu of the registered agent of a limited liability corporation under certain circumstances. Tenn. Code Ann. § 48-208-104(b) provides:

> Secretary of state is default agent. Whenever a domestic or foreign LLC authorized to do business in this state fails to appoint or maintain a registered agent in this state, whenever its registered agent cannot be found with reasonable diligence, whenever a foreign LLC shall transact business or conduct affairs in this state without first obtaining a certificate of authority from the secretary of state, or whenever the certificate of authority of a foreign LLC shall have been cancelled or revoked, then the secretary of state shall be an agent of such LLC upon whom any such process, notice or demand may be served.

Arch Wood was unable to serve FlamedXX because it failed to maintain a registered agent by properly updating the correct address for its registered agent. Moreover, Arch Wood was unable to find the registered agent despite reasonable diligence on its part to do so. Therefore, pursuant to Tenn. Code Ann. § 48-208-104(b), service was properly effected on FlamedXX on January 25, 2011 when the Tennessee Secretary of State was served with a certified copy of the summons

13

and complaint. Furthermore, this service was sufficient for the default in the instant case and to enter default judgment in this case. As provided by Tenn. R. Civ. P. 4.04(10), "[s]ervice by mail shall not be the basis for the entry of a judgment by default unless the record contains a return receipt showing personal acceptance by the defendant or by persons designated by Rule 4.04 *or statute*." In this case, the Tennessee Secretary of State indicated by an affidavit which was filed in the court record that he personally received the summons and complaint on January 25, 2011 pursuant to Tenn. Code Ann. § 48-208-104(b).

At the evidentiary hearing, FlamedXX argued that the Clerk of the Court relied only on the December 10 and December 29, 2010 attempts of service to enter the default and therefore service on the Tennessee Secretary of State could not be considered for purposes of determining whether the default should be set aside. The undersigned notes that the Clerk of the Court used the form prepared by Arch Wood when entering default. In any event, at the time the default was entered, March 3, 2011, FlamedXX *was* in default. More than 21 days had elapsed since service and FlamedXX had not responded. *See* Fed. R. Civ. P. 12. Moreover, Fed. R. Civ. P. 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." At the time the default was entered, it was apparent from the court record that FlamedXX was in default. The undersigned concludes default was properly entered.

B. *Setting Aside a Default When Service Has Been Obtained*

Pursuant to Fed. R. Civ. P. 55(c), a court may exercise its discretion and set aside an entry of default for good cause shown. *Dassault Systems, SA v. Childress,* 663 F.3d 832, 840-41 (6th Cir. 2011)*, United States v. $22,050.00 in U.S. Currency,* 595 F.3d 318, 324 (6th Cir. 2010);

14

*Shepard Claims Servs, Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986). A court must be judicious in exercising this discretion, however, as "[t]rials on the merits are favored in federal courts and a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." *Shepard Claims Servs*, 796 F.2d at 193 (citing *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir. 1983); *accord*, *Childress*, 663 F.3d at 841.

To determine whether good cause exists for setting aside an entry of default, the court must weigh three factors: (1) whether the plaintiff will be prejudiced if the default is set aside; (2) whether the defendant has a meritorious claim or defense; and (3) whether culpable conduct of the defendant led to the default. *Childress*, 663 F.3d at 838-89; *$22,050.00 in U.S. Currency,* 595 F.3d at 324; *Shepard Claims Servs*, 796 F.2d at 192.

Where a defaulting defendant can establish the first two factors in his or her favor, it is an abuse of discretion for the district court to deny a motion to set aside the default in the absence of a willful failure of the moving party to appear and plead. *Dassault*, 663 F.3d at 844; *$22,050.00 in U.S. Currency,* 595 F.3d at 324; *Shepard Claims Servs*, 796 F.2d at 194. In conducting its review of the factors, the court should construe all ambiguous or disputed facts in the light most favorable to the defendant with any doubt being resolved in favor of the defendant. *Childress*, 663 F.3d at 841, *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).

As to the first factor, a defense is meritorious if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *$22,050 in U.S. Currency,* 595 F.3d at 324. A defendant is not required to show that its defense is likely to succeed on the merits or offer detailed factual allegations in support of the defense.

*Id.* A defense need only be "good at law" and present only "a hint of a suggestion which, proven at trial, would constitute a complete defense." *Id.*

In the instant case, FlamedXX has met the standard set forth above. FlamedXX's defenses to Arch Wood's claims are set out in FlamedXX's memorandum in support of its motion to set aside the default and are incorporated herein. (*See* Doc. 17 at pp 5-6). The undersigned notes also that Arch Wood has not contested that FlamedXX meets this factor. Accordingly the undersigned concludes FlamedXX has established that this factor supports its motion to set aside the default.

The second equitable factor under this analysis is prejudice to the plaintiff. "'[D]elay alone is not a sufficient basis for establishing prejudice.'" *Dassault*, 663 F.3d at 842 (brackets original) (quoting *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)). In order to show prejudice, the plaintiff must show that delay will result in loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. *Id.* Thompson testified there has been no litigation hold in place but his company does not destroy documents anyway. Thompson also testified that one of the computers in his office was destroyed when the roof leaked during a rain. He did not, however, know whether the computer contained any information relevant to this lawsuit. FlamedXX currently employs the same people it did when it was doing business with Arch Wood therefore access to witnesses will not be difficult. While it is not entirely clear, the undersigned will give FlamedXX the benefit of the doubt and resolve this factor in its favor.

The last factor to consider is the culpability of the defendant in failing to respond before default was entered. Because the first two factors have been resolved in FlamedXX's favor, the motion to set aside default must be granted unless there is a "willful failure of the moving party

16

to appear and plead." *Shepard Claims Servs*, 796 F.2d at 194.   Negligence, excusable or not, is not a valid basis to deny this motion. *Id. See also, $22,050 in U.S. Currency,* 595 F.3d at 327 ("mere negligence or failure to act reasonably is not enough to sustain a default." )  To rise to the level of a "willful failure to appear and plead," "the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Childress*, 663 F.3d at 841 (citing *Shepard Claims Servs*, 796 F.2d at 194). Stated another way, "[w]here the party in default satisfies the first two requirements for  relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings." *Shepard Claims Servs*, 796 F.2d at 195.

FlamedXX was negligent at best to fail to update the Tennessee Secretary of State with the current address of its registered agent.  FlamedXX is required by law to have a valid registered agent in the State of Tennessee for service of process.  Tenn. Code Ann. § 48-208-101. FlamedXX has argued that it was not its fault that the Secretary of State made a mistake in entering "Gallnaitte Street"  into its database for FlamedXX's registered agent when it had given the Secretary the "2030 Galbraith Street" address.  However that mistake has no significance in this case since Thompson was no longer living at 2030 Galbraith when Arch Wood tried to serve him.  Even if the Galbraith address had been properly spelled by the Secretary of State, the Secretary of State has not had a valid address for FlamedXX's registered agent since November 2009 when Thompson moved from 2030 Galbraith Street.

Moreover, it appears FlamedXX may have chosen to ignore the certified mail coming to its warehouse at 400 Davidson Street.  All mail from Husch Blackwell, whom Thompson knew represented Arch Wood, went *unclaimed* from this address.  On the other hand, the notice of the

17

evidentiary hearing on Arch Wood's motion for default judgment sent by regular mail in a Court envelope was claimed.

Nevertheless, given that the Court must view all ambiguous facts in FlamedXX's favor, and, giving FlamedXX the benefit of the doubt, the Court concludes FlamedXX's failure to update the address of its registered agent and its failure to pick up its mail sent to its principal place of business at 400 Davidson Street constitute negligent conduct. On the other hand, for the reasons to be discussed, the undersigned finds Patrick Thompson intentionally evaded service of process by Cooper and that conduct does evince an intent to thwart judicial proceedings.

In determining that Thompson intentionally evaded service of process, I find Thompson's version of events concerning his contact with Cooper to be incredible. I do find Cooper to be credible. Cooper is a professional process server. He would not call a registered agent once, as is claimed by Thompson, and then simply give up trying to effect service. Cooper's testimony concerning his efforts to reach Thompson was detailed and convincing. I credit Cooper's version of events.

Thompson is an experienced businessman and knows his responsibility as a registered agent. Thompson has attempted to make much out of the fact that Cooper did not tell him he was trying to serve *Arch Wood*'s complaint. Nevertheless, Thompson knew Cooper was attempting to serve legal process on him and he was well aware it may involve FlamedXX as he asked Cooper if the legal papers were for him personally or for FlamedXX. He had also been told by Hardison that if the parties did not settle their dispute by December 1, 2011, Arch Wood was going to proceed with its lawsuit against FlamedXX. Furthermore, Thompson's argument implies that a registered agent may pick and choose with which lawsuits he is served. Of course, this is not the case. The very purpose of a limited liability company's registered agent is to

receive service of process on behalf of his or her company.  *See* Tenn. Code. Ann. § 48-208-104(a) ("Agent for service of process. A foreign or domestic LLC's registered agent is the LLC's agent for service of process, notice, or demand required or permitted by law to be served on the LLC.")  FlamedXX is required by law to have a valid registered agent in the State of Tennessee for service of process at all times.  T.C.A. § 48-208-101.

FlamedXX also cites as significant the fact that Rodney Hardison did not email Thompson and tell him that Arch Wood was trying to serve him with its complaint.  Hardison and Thompson exchanged emails in December 2010 and January 2011 concerning some warranty work for OSB that had already been treated by FlamedXX; Hardison did not mention attempts to serve FlamedXX in those emails.  However, if Hardison had, it would not have constituted service of process. Hardison's failure to advise Thompson by email that Arch Wood was trying to serve FlamedXX does not ameliorate the fact that Thompson knew he was the registered agent for FlamedXX, yet he refused to meet with Cooper or provide a valid address for him as the registered agent of FlamedXX.  Thompson promised to meet with Cooper and then avoided Cooper's follow-up phone calls.  He hung up the phone on Cooper instead of offering his valid address as a registered agent for service.  The legal system is not a game.  In exchange for FlamedXX's protection under Tennessee law as a limited liability corporation, FlamedXX agreed to name a registered agent who would be available at all times for service of process should a legal dispute arise involving FlamedXX.  Thompson's conduct showed a lack of respect for his responsibilities as a registered agent for FlamedXX and showed an intent to thwart judicial proceedings.  Further, it was this conduct that resulted in FlamedXX's being in default.   On the basis of these finding, I will recommend the motion to set aside the default be denied.

_C. Alternative Recommendation_

In the event that the District Court does not accept and adopt the undersigned's first recommendation that FlamedXX's motion to set aside the default be denied, then the undersigned makes this alternative recommendation: that as a condition of granting the motion to set aside the default, FlamedXX be required to pay: 1) Arch Wood's reasonable attorney's fees and expenses incurred in attempting to obtain service on FlamedXX, both by certified mail and through personal service to Thompson, 2) Arch Wood's reasonable attorney's fees and expenses incurred in preparing its application for entry of default, and its motion for default judgment, its response in opposition to FlamedXX's motion to set aside default, and 3) Arch Wood's reasonable attorney's fees and expenses incurred in preparing for and attending the February 8, 2012 evidentiary hearing on FlamedXX's motion to set aside default.

The court has inherent power to impose such conditions when granting a motion to set aside a default:

> The court's inherent power and use of discretion …enables it to set aside default entries on various conditions. The imposition of conditions as part of the granting of a Rule 55(c) motion can be used to rectify any prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation. The most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues.

10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2700 (Civil 3d ed.1998). _See also Shepard Claims Servs_, 796 F.2d at 195 ("Our disposition of the case [granting the motion to set aside default] does not preclude the district court from assessing or determining some appropriate penalty or sanction against the defendant or his counsel for the delay occasioned by the careless and inexcusable conduct of defendant's counsel herein discussed"); _Currie v._

*Wood*, 112 F.R.D. 408, 410 n. 1 (E.D. N.C. 1986) (setting aside entry of default but ordering moving party to pay plaintiff his costs and reasonable attorney's fees incurred in effecting the entry of default and in opposing defendant's motion); *Ali v. Tolbert*, 636 F.3d 622, 626-27 (C.A.D.C. 2011) (holding that a court may sanction a party for attempting to evade service "under the district court's inherent authority, which 'enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments'" (citing *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C.Cir.1995)).

## IV. Conclusion

Because I find FlamedXX's registered agent intentionally attempted to thwart judicial proceedings and because I find this culpable conduct on the part of FlamedXX led to the default at issue in this case, it is RECOMMENDED that FlamedXX's motion to set aside the default entered against it be DENIED.

In the alternative, it is RECOMMENDED that FlamedXX be required to pay: 1) Arch Wood's reasonable attorney's fees and expenses incurred in attempting to obtain service on FlamedXX, both by certified mail and through personal service to Thompson, 2) Arch Wood's reasonable attorney's fees and expenses incurred in preparing its application for entry of default, its motion for default judgment, and its response in opposition to FlamedXX's motion to set aside default, and 3) Arch Wood's reasonable attorney's fees and expenses incurred in preparing

for and attending the February 8, 2012 evidentiary hearing on FlamedXX's motion to set aside

default. [3]

<br>

s/ William B. Mitchell Carter
William B. Mitchell Carter
United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(a). Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).