UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ARCH WOOD PROTECTION, INC., | ) | |
| Plaintiff, | ) | |
| | ) | 1:10-CV-282 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| FLAMEDXX, LLC., | ) | |
| Defendant. | | |

### M E M O R A N D U M

Now before the Court are two motions related an entry of default against Defendant

FlamedXX, LLC ("FlamedXX").[1] First, Plaintiff Arch Wood Protection, Inc. ("Arch Wood")

followed the entry of default with a motion for default judgment (Court File No. 11). Second,

FlamedXX has moved to set aside the entry of default (Court File No. 16). The Court referred both

motions to Magistrate Judge William B. Mitchell Carter, who issued a report and recommendation

("R&R") recommending FlamedXX's motion to set aside the default be denied or, in the alternative,

be conditionally granted (Court File No. 37). FlamedXX timely objected to the R&R (Court File

No. 38), and Arch Wood responded to FlamedXX's objections (Court File No. 40). For the reasons

discussed below, the Court **ACCEPTS** and **ADOPTS** the R&R's alternative recommendation.

Accordingly, the Court will **DENY** Arch Wood's motion for default judgment (Court File No. 11)

and will **GRANT** FlamedXX's motion to set aside entry of default (Court File No. 16) on the

condition it pay the reasonable attorney's fees and expenses as described in the R&R. Finally,

---

[1] There is a discrepancy in how the parties refer to the defendant in this case. Plaintiff Arch
Wood refers to "FlameDXX" and Defendant Flamedxx refers to itself "FlamedXX." The Court will
follow the defendant's description of itself as "FlamedXX."

acting under Fed. R. Civ. P. 72(c),[2] the Court will **REFER** the case to Magistrate Judge Carter to recommend an amount of reasonable attorney's fees and expenses that FlamedXX should pay to Arch Wood.[3]

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Owned by Patrick Thompson, Sr. ("Thompson") and his son, FlamedXX employs eleven employees (including the Thompsons) and is based in a warehouse beside the Cumberland river in Nashville, Tennessee.[4]  Thompson's son serves as the Chief Executive Officer ("CEO") and President of the company, and Thompson, who is 66 years-old, goes to FlamedXX's place of business approximately once a month.  Thompson occasionally works out of a home office.  Finally, Thompson has been the registered agent for FlamedXX since 2008.[5]

FlamedXX specializes in fire retardant coating.  The company owns a formula which applies such coating to oriented strand board ("OSB"), and FlamedXX considers its unique application

---

[2] Under Fed. R. Civ. P. 72(c), a district court considering objections to an R&R may "accept, reject, or modify the recommended disposition; receive further evidence; or *return the matter to the magistrate judge with instructions*."  (emphasis added).

[3] In advance of an evidentiary hearing before Judge Carter, FlamedXX filed a supplemental memorandum in support of its motion to set aside default (Court File No. 32).  As Arch Wood pointed out in its motion to strike FlamedXX's supplemental memorandum (Court File No. 34), E.D. Tenn. L.R. 7.1(d) only permits supplemental briefs with the Court's approval or "to call to the Court's attention developments occurring after a party's final brief is filed."  Because FlamedXX did not secure the Court's approval and nothing in the supplemental memorandum calls to the Court's attention anything occurring after FlamedXX's final brief, the Court will **GRANT** Arch Wood's motion to strike (Court File No. 34), and will **STRIKE** FlamedXX's supplemental memorandum (Court File No. 32).

[4] This factual background is drawn almost entirely from Judge Carter's R&R.  The Court notes where one of the parties offers a different factual account than what is presented in the R&R.

[5] FlamedXX first registered with the Tennessee Secretary of State in 2004.

2

process to be a trade secret and is therefore seeking to patent both the coating process and the coating itself. Based on advice provided by attorney Jay Bowen ("Bowen"), FlamedXX installed a lock and buzzer on its door in the cavernous warehouse where it is located in order to protect its coating and application process as trade secrets. The warehouse, located at 400 Davidson Street in Nashville, also houses eight to ten other businesses.

In May 2009, Arch Wood and FlamedXX entered into a contract under which FlamedXX was to apply fire retardant coating to OSB provided by Arch Wood. The contract stipulated Arch Wood would supply a certain amount of business, and in return, FlamedXX would deal exclusively with Arch Wood. Under the contract, Arch Wood was to direct all written communications to 2940 Foster Creighton Drive in Nashville. Soon after the parties entered the contract, however, FlamedXX moved to its present address at 400 Davidson Street.

Sometime in the fall of 2010 the parties terminated the contract. They disagree regarding who initiated the termination and who is at fault. On October 15, 2010, Attorney Mark Smith ("Smith") informed Bowen by email that Smith in his capacity as counsel for Arch Wood had filed a complaint in federal court but had not had summons issued. Smith explained to Bowen he had not had the summons issued because Arch Wood still sought to resolve the issue without litigation. Smith asked Bowen to "[p]lease discuss this matter with FlamedXX and let [Smith] know if FlamedXX is willing to work toward an amicable settlement." Smith received no response from Bowen.

On November 30, 2010, Smith sent Bowen a letter via fax informing him Smith had not received a response to his October 15 email and asking Bowen whether Bowen represented FlamedXX in the action filed in federal court by Arch Wood. Smith also indicated a settlement

3

conference had been set for the following day, December 1, 2010, and Smith sought to determine whether Thompson would be attending the settlement conference with legal representation. If Thompson intended to attend without a lawyer–as Smith had heard–Smith needed to secure a waiver from Thompson and Thompson's attorney permitting Smith to attend as Arch Wood's counsel. Smith's letter concluded by telling Bowen the settlement conference would be cancelled if Smith heard no response by 4 pm.

In response to the faxed letter, Bowen telephoned Smith the same day. Bowen relayed the following to Smith: 1) FlamedXX had not retained Bowen to represent the company in the federal action filed by Arch Wood because as far as Bowen understood, no federal action yet existed; 2) Bowen would not be attending the following day's settlement conference with Thompson; and 3) Thompson desired the settlement conference to include businessmen only, which would exclude Smith's participation. Bowen did not offer to accept service during this phone call, in large part because he did not believe the lawsuit was going forward at the time of the telephone call. Moreover, because he had not been retained by FlamedXX in connection with any federal court action brought by Arch Wood, Bowen did not have authority to receive service.

Also on November 30, 2010 and after the phone conversation between Smith and Bowen, Rodney Hardison ("Hardison"), an employee at Arch Wood, sent an email to Thompson at FlamedXX. That email read as follows:

> As I made plain to you previously, and as you agreed, December 1, 2010 is the deadline for us to come to an agreement on a number and schedule for payment. Acceptance of the settlement must be confirmed in writing. If we do not have an agreement by tomorrow by the close of business tomorrow at 5 pm EST, Arch will amend its complaint and serve it as soon as possible.
>
> Since you have stated that your counsel will not be present, and since you will not agree to the participation of Arch's counsel in the absence of your counsel, the face

4

to face settlement hearing scheduled for tomorrow in Chattanooga is cancelled.

As outlined in the email, Arch Wood then amended it complaint and made preparations to serve it on FlamedXX.

On December 10, 2010, Arch Wood's attorneys attempted to serve FlamedXX with a summons and complaint sent by certified mail to Thompson, who served as FlamedXX's registered agent, at 2030 Gallnaitte in Nashville, TN.  Arch Wood's attorneys directed the summons and complaint to Thompson at this address because it was listed as the appropriate address on the Tennessee Secretary of State's website.[6]  The summons and complaint were, however, returned to Arch Wood's attorneys marked by the United States Postal Service ("Postal Service") as "no such street."  At the evidentiary hearing, Thompson testified the Secretary of State must have made a typographical error as he had initially given his address as 2030 Galbraith Road in Nashville. Thompson also observed, however, that he had moved from the Galbraith Road address to 700 Brass Lantern Place (also in Nashville) in November 2009–over a year before the summons and complaint were sent.

On December 29, 2010, Arch Wood's attorneys again sent a summons and complaint by certified mail to 2030 Gallnaitte in Nashville, TN.  This time the Postal Service forwarded the service packet to 566 Mainstream in Nashville, TN.  The service packet was from there returned back to Arch Wood's attorneys with the message "Return to Sender, Not Deliverable as Addressed, Unable to Forward."  At the evidentiary hearing, Thompson explained FlamedXX's principal place of business had been located at 566 Mainstream until some point in 2008, when the company moved

---

[6] As of March 27, 2012, the Tennessee Secretary of State website still lists Patrick M. Thompson at 2030 Gallnaitte in Nashville, TN as FlamedXX's registered agent.

to 2940 Foster Creighton Drive in Nashville, and from there in June 2009 to its current location at 400 Davidson Street in Nashville.

In January 2011, Arch Wood retained Ricky Cooper ("Cooper"), a private investigator and process server, to locate Thompson and serve him as FlamedXX's registered agent. On January 17, 2011, Cooper drove to the warehouse at 400 Davidson Street, where he saw the FlamedXX sign located on the side of the building, which to Cooper otherwise appeared to be an abandoned warehouse. Although he saw the FlamedXX sign on the warehouse, Cooper could not locate the entrance for the company. Cooper then called Arch Wood's attorneys, who apparently gave him additional information. Cooper then located a plumbing business at the bottom of the warehouse and learned from someone at that business that the entrance to FlamedXX was upstairs in the building. Cooper then proceeded upstairs to an office.

Cooper then entered an office space in the upstairs part of the warehouse. He encountered three men in the back of the warehouse space measuring something with measuring tape. When eventually one of the men approached Cooper, Cooper informed him he was there to serve process on Thompson in his capacity as a registered agent for FlamedXX. The man responded curtly "don't know him, never heard of him," and kept walking right past Cooper. At the evidentiary hearing where Thompson was present, Cooper acknowledged the man who spoke to him was not Thompson.

Unable to contact Thompson at FlamedXX's place of business, Cooper telephoned Thompson directly. Thompson recalled receiving a phone call from Cooper in which Cooper told Thompson that Cooper had papers to give to Thompson, and Thompson assumed Cooper was a

6

process server. At this point, the testimonies of Cooper and Thompson diverge.[7] According to Thompson, he told Cooper he was Chattanooga and that Cooper should call him back in a few days. Thompson testified he did not recall any further communication with Cooper.

Cooper, on the other hand, testified that after he told Thompson he was a process server, Thompson asked whether the paperwork related to Thompson himself or to FlamedXX. Cooper replied he did not know because he had not read the documents. Thompson then told Cooper he was in Chattanooga but would call Cooper in a few days when he returned to Nashville. Thompson, however, failed to call Cooper back. Cooper testified he then had three or four additional phone conversations with Thompson between January 17, 2010 and February 1, 2010. On one occasion, Cooper indicated he was close to what he believed was Thompson's home address and suggested he come and deliver the papers to Thompson at home. Thompson, however, told Cooper he did not live at the address Cooper had mentioned, and then abruptly hung up the phone on Cooper. On another occasion, Thompson told Cooper he would call him at 11 am the following day to arrange a meeting, but failed to call. When Cooper called Thompson at the scheduled time, Thompson did not answer his phone. Cooper left a message, but Thompson did not return his call.[8]

Cooper testified he has served over fifty registered agents throughout his career. He has served approximately half of these agents at their homes, and the other half at their place of business. He testified he has never had as much difficulty serving a registered agent as he had with Thompson.

---

[7] The Magistrate Judge found Thompson's version of the events to be incredible, and Cooper's version credible. Court File No. 37, p. 18.

[8] FlamedXX offers no explanation for the considerable discrepancy between the testimonies of Cooper and Thompson beyond a sentence in a footnote in its objection: "[i]t is not unusual for a 66 year old business man to forget telephone calls or messages left over a year prior to the date of his testimony" (Court File No. 39, p. 18 n. 51).

Having been unsuccessful in their first two efforts at service by mail and using Cooper, Arch Wood's attorneys sent a summons and complaint by certified mail to the Tennessee Secretary of State on January 25, 2011, asking the Secretary of State to accept service on behalf of FlamedXX.[9] The Secretary of State acknowledged it had received the service packet through a return receipt. The Secretary of State attempted service on FlamedXX at 3100 West End Avenue in Nashville, but the service packet was returned marked "Attempted–Not Known." Thompson testified at the evidentiary hearing that FlamedXX had maintained an office at that address but had moved in 2005.

On February 3, 2011, Arch Wood' attorneys again attempted to serve FlamedXX. They sent another summons and complaint by certified mail, in care of Thompson, to FlamedXX at 400 Davidson Street in Nashville. This service packet was returned to Arch Wood's attorneys marked "Returned to Sender, Unclaimed." The zip code had been scratched out and a different zip code written in. Thompson testified at the evidentiary hearing that FlamedXX rarely checked the mailbox provided for tenants at the 400 Davidson warehouse office.

Arch Wood's attorneys made their final attempt to ensure service on February 11, 2011. They sent three service packets, each containing a summons and complaint, by certified mail to FlamedXX at three addresses: 1) 400 Davidson Street in Nashville; 2) 3100 West End Ave. in Nashville; and 3) P.O. Box 332036 in Nashville. The first packet was marked "Return to Sender, Unclaimed." The second packet came back marked "Not here; Refused by Occupant." The third packet, which had been sent to a P.O. box address which Thompson admitted at the evidentiary hearing was his personal P.O. Box, was returned to Arch Wood's lawyers marked "Unclaimed."

---

[9] Arch Wood's attorneys invoked Tenn. Code. Ann. § 48-208-104(b), which the Court discusses below.

At the evidentiary hearing, Thompson admitted he had given Hardison of Arch Wood the P.O. Box as a valid FlamedXX address; Thompson testified, however, that he did not expect the Postal Service would deliver mail related to FlamedXX to that address because it was his personal address.

Between December 2010 and February 2011, as Arch Wood's attorneys attempted to serve FlamedXX, Hardison of Arch Wood exchanged at least four emails with Thompson concerning warranty work related to the underlying contract. At no time during these communications did Hardison mention to Thompson Arch Wood's lawsuit against FlamedXX, or the fact Arch Wood was attempting to serve its amended complaint on FlamedXX. Although Thompson testified that as far as he knew his current home address and phone number were available in the Nashville phone book, the Magistrate Judge noted that as of February 7, 2012, at least one source listed Thompson as located at 132 Ensworth Ave in Nashville, an address he has not occupied since February 2008 (*see* Court File No. 37, p. 9).[10] Thompson testified he never refused to accept a certified mailing or tried to evade service.

On February 11, 2011, Arch Wood applied for default (Court File No. 9). In the application, Arch Wood referred to its service on December 10, 2010 and December 29, 2010 as the basis for entry of default. Arch Wood also mentioned additional service on the Tennessee Secretary of State on January 25, 2011. Noting the appearance of service on FlamedXX on December 10 and December 29, the Clerk of Court ("Clerk") entered default against FlamedXX on March 3, 2011 (Court File No. 10). On March 11, 2011, Arch Wood moved for default judgment (Court File No.

---

[10] The source the Magistrate Judge relied on was www.whitepages.com. That source still listed Thompson incorrectly as residing at 132 Ensworth Ave as of March 27, 2012. *See* http://www.whitepages.com/name/Patrick-M-Sr-Thompson/Nashville-TN/1z5fw53 (last visited March 23, 2012).

9

11).

According to Thompson's testimony, the first time he and FlamedXX learned of Arch Wood's lawsuit was in May 2011, when Thompson received a notice mailed by this Court of an evidentiary hearing to be held on May 23, 2010. That notice was sent by regular mail to 400 Davidson Street in Nashville. Upon receiving that notice, Thompson contacted Bowen, who had served as FlamedXX's counsel in the past. Bowen in turn directed Thompson to Gary Patrick, an attorney who made an appearance in this case on May 18, 2011 (Court File No. 15). FlamedXX's motion to set aside default (Court File No. 16) followed two days later on May 20, 2011.

This Court referred Arch Wood's motion for default judgment and FlamedXX's motion to set aside default to Magistrate Judge Carter. On February 8, 2012, Judge Carter conducted an evidentiary hearing, and on February 22, 2012, he issued an R&R recommending the Court deny FlamedXX's motion to set aside default, or, in the alternative, grant FlamedXX's motion but impose monetary sanctions on the company (Court File No. 37). The R&R proposed as the alternative recommendation FlamedXX's motion to set aside default be granted with the condition FlamedXX pay 1) Arch Wood's reasonable attorney's fees and expenses incurred in attempting to obtain service on FlamedXX, both by certified mail and through personal service; 2) Arch Wood's reasonable attorney's fees and expenses incurred in preparing its application for entry of default, its motion for default judgment, and its response in opposition to FlamedXX's motion to set aside default; and 3)Arch Wood's reasonable attorney's fees and expenses incurred in preparing for and attending the February 8, 2012 evidentiary hearing on FlamedXX's motion set aside default. FlamedXX timely filed two objections (Court File No. 38), and Arch Wood responded (Court File No. 40).

## II.    STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made.  28 U.S.C. § 636(b)(1)(C).  But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the Magistrate Judge.  *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980).  The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility.  *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).  The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference.  *United States v. Carmack*, 426 F. App'x 378, 380 (6th Cir. 2011).

After conducting *de novo* review of the Magistrate Judge's R&R, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," and may also "recommit the matter to the magistrate judge with instructions."  § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").


## III.    DISCUSSION

In an extensive memorandum, FlamedXX makes two objections to the R&R.  First, FlamedXX contends entry of default was based on invalid service and is therefore void.  Consequentially, in FlamedXX's view, entry of default was improper and should be set aside.  Second, FlamedXX argues even if the Court determines FlamedXX was served and entry of default was proper, the Court should set aside default aside under the "good cause" standard enunciated in

11

Fed. R. Civ. P. 55(c). For each objection, the Court first analyzes the governing law, and then conducts a *de novo* review of the objection. In doing so, the Court denies FlamedXX's first objection, but grants its second objection, and will therefore set aside entry of default against FlamedXX. Finally, the Court explains why imposition of sanctions on FlamedXX is appropriate in this case.

### A.     Service of Process on FlamedXX

As FlamedXX correctly notes, entry of default against a defendant requires a showing the plaintiff properly served the defendant with summons and complaint. Thus, if a plaintiff failed to properly serve a defendant, the defendant's subsequent motion to set aside default must be granted *O.J. Distributing, Inc. v. Hornell Bewing Co., Inc.* 340 F.3d 345, 353 (6th Cir. 2003) ("[I]f service of process was not proper, the court must set aside an entry of default"). FlamedXX makes two arguments in support of its first objection that entry of default in this case was improper. First, FlamedXX contends Arch Wood did not obtain valid service of process on FlamedXX before Arch Wood applied to the Clerk for entry of default. Second, FlamedXX argues Arch Wood did not use reasonable diligence to locate FlamedXX before resorting to service of process through the Tennessee Secretary of State. The Court considers each of these arguments in turn.

Because the Magistrate Judge already addressed FlamedXX's first argument–that the Clerk improperly relied on the December 10, 2010 and December 29, 2010 to enter default–in considerable detail (*see* Court File No. 37, pp. 10-13), the Court only briefly discusses it here. In essence, although FlamedXX correctly notes Arch Wood's attempts at service on December 10 and

12

December 29, 2010 were not sufficient under Tenn. R. Civ. P. 4.04(10)[11] as incorporated as a proper

method of service in a federal action under Fed. R. Civ. P. 4(e)(1)[12] to form the basis for a default,

FlamedXX was nonetheless in default on March 3, 2011–the date the Clerk entered default against

FlamedXX. Although the Clerk's entry of default should not have relied on the December 10 and

December 29, 2010 services of process, Arch Wood's January 25, 2011 service of process on the

Tennessee of Secretary–which was also mentioned in Arch Wood's application for default, *see* Court

File No. 9, ¶ 5–provided a proper basis for entry of default. Because more than twenty-one days[13]

had elapsed since Arch Wood's January 25, 2011 service of process on FlamedXX and FlamedXX

failed to plead or otherwise defend, the Clerk's entry of default against FlamedXX was proper under

Fed. R. Civ. P. 55(a).

It is true the twenty-one-day period had not elapsed at the time Arch Wood applied for a

default. Because Arch Wood had properly served FlamedXX (through the Tennessee Secretary of

State) on January 25, 2011, and then applied for default on February 11, 2011, only sixteen days had

elapsed. FlamedXX points to nothing in the Federal Rules of Civil Procedure, however, and no case

law indicating Arch Wood's submission of an application for a default before the requisite time

period had run *ipso facto* renders that default application invalid. So long as the defendant had

---

[11] In relevant part, Tenn. R. Civ. P. 4.04(10) provides "[s]ervice by mail shall not be the basis for the entry of a judgment by default unless the record contains a return receipt showing personal acceptance by the defendant or by persons designated by Rule 4.04 or statute." The record does not contain a return receipt showing personal acceptance for the December 10 or December 29 certified mailings.

[12] Fed. R. Civ. P. 4(e)(1) allows for valid service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

[13] Fed. R. Civ. P. 12 provides for the twenty-one-day period for a defendant to answer or otherwise defend.

13

defaulted at the time the Clerk entered default, there is no grounds for invalidating it. Accordingly, because the Court concludes FlamedXX was properly served on January 25, 2011, the Clerk's entry of default against it on March 3, 2011 was valid.

FlamedXX's second argument challenges the validity of entry of default against it by claiming the January 25, 2011 service of process was inadequate. The relevant service rule, which FlamedXX does not challenge, provides:

> Whenever a domestic or foreign LLC authorized to do business in this state fails to appoint or maintain a registered agent in this state, *whenever its registered agent cannot be found with reasonable diligence*, whenever a foreign LLC shall transact business or conduct affairs in this state without first obtaining a certificate of authority from the secretary of state, or whenever the certificate of authority of a foreign LLC shall have been cancelled or revoked, *then the secretary of state shall be an agent of such LLC upon whom any such process, notice or demand may be served*.

Tenn. Code. Ann. § 48-208-104(b) (emphases added).[14] FlamedXX contends Arch Wood did not use "reasonable diligence" in its efforts to find Thompson. Specifically, FlamedXX emphasizes 1) Arch Wood's attorney Smith could have served FlamedXX's attorney Bowen; or 2) given their ongoing dealings, Arch Wood's employee Hardison could have informed Thompson. The Court is unpersuaded by these arguments.

The record indicates Arch Wood expended considerable time and energy trying to locate and serve Thompson, FlamedXX's registered agent. First, Arch Wood's attorneys mailed service packets on no fewer than four different occasions: December 10, 2010, December 29, 2010,

---

[14] Because the record contains a return receipt showing personal acceptance of the summons and complaint by the Tennessee Secretary of State, *see* Court File No. 9, ex. C, and because Tenn. Code. Ann. § 48-208-104(b) is a statute designating the Tennessee Secretary of State as a proper recipient of service, service in this manner properly forms the basis for a subsequent entry of default under Tenn. R. P. 4.04(10).

14

February 3, 2011, and February 11, 2011. These packets were mailed to a number of different addresses, including the mailing address given for Thompson at the Tennessee Secretary of State's website, the warehouse where FlamedXX maintains its current operations, an address where FlamedXX had formerly had offices, and Thompson's personal post office box, which he had informed an employee at Arch Wood he sometimes used for FlamedXX business. In addition to these numerous mailings, Arch Wood retained Ricky Cooper, a private investigator and process server, to serve Thompson personally. According to Cooper's testimony and an email log of his activities, Cooper made several unsuccessful attempts to serve Thompson. Indeed, Cooper testified he had never had as much difficulty in his years as a process server serving any registered agent as he had with Thompson. Based on this evidence, the Court concludes Arch Wood used reasonable diligence to find Thompson, and was therefore justified in serving a summons and complaint for this lawsuit on the Tennessee Secretary of State as permitted under Tenn. Code. Ann. § 48-208-104(b).

Nor is this conclusion shaken by FlamedXX's arguments. FlamedXX's contention Smith, Arch Wood's lawyer, could have asked Bowen, FlamedXX's lawyer, to receive service fails because as far as Smith knew, Bowen was not representing FlamedXX in the lawsuit. When, on November 30, 2010, Smith sought Bowen's and Thompson's consent for Smith to appear at the settlement talks with his client, Bowen explicitly told Smith that he, Bowen, had not been retained by FlamedXX in a lawsuit brought by FlamedXX. Thus, there was no reason for Smith to reach out to Bowen to ask if Bowen would receive service. This contention also falls short because the statute requires reasonable diligence from a plaintiff to find a defendant's registered agent, and there is no dispute here that Thompson–not Bowen–was the registered agent in question.

FlamedXX's argument that the email contact between Hardison, an employee of Arch Wood, and Thompson during the time Arch Wood sought to serve Thompson indicates Arch Wood failed to use reasonable diligence to find Thompson, is equally unavailing. Hardison's November 30, 2010 email to Thompson had made clear to Thompson Arch Wood's intention to amend its complaint and serve process on FlamedXX. Thompson's question to Cooper whether the service packet Cooper was to serve on Thompson related to FlamedXX or Thompson personally indicated Thompson was well aware of the possibility of service of process on FlamedXX. There mere fact Hardison and Thompson exchanged emails relating to other aspects of the business between Arch Wood and FlamedXX is not an indication of Arch Wood's failure to undertake reasonable diligence in trying to find Thompson.

Accordingly, the Court **DENIES** FlamedXX's first objection that entry of default against it was improper.

### B.     Setting Aside Default

Because the Court has concluded entry of default against FlamedXX was proper, it must next consider whether that default should be set aside. Under Fed. R. Civ. P. 55(c), a court may set aside default for good cause.[15] The good cause analysis looks to three factors: "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Dassault Sys. S.A. v. Childress*, 663 F.3d 832, 838-39 (6th Cir. 2011) (quoting *United Coin Meter Co. v. Seaboard Coastline Railroad*, 705 F.2d 839, 844 (6th Cir. 1983)). FlamedXX contends

---

[15] Fed. R. Civ. P. 55(c) also permits a court to set aside default pursuant to Fed. R. Civ. P. 60(b). Although the elements for setting aside default under Rule 55(c) and Rule 60(b) are the same, the standard for setting aside a final default judgment under Rule 60(b) is more demanding than the standard used for a case, like this one, involving the setting aside of an entry of default under Rule 55(c). *Dassault Sys. S.A. v. Childress*, 663 F.3d 832, 839 (6th Cir. 2011).

16

default should be set aside because it has meritorious defenses, its conduct was not willful, and set-aside would not prejudice Arch Wood. Although Arch Wood in essence concedes it would not be prejudiced by set-aside and that FlamedXX has meritorious defenses within the meaning of the Rule 55(c) good cause standard,[16] Arch Wood argues FlamedXX's motion should be denied because FlamedXX's default was willful.

In a very close call, the Court concludes FlamedXX's default should indeed be set aside. Three reasons underlie the Court's conclusion. First, case law in set-aside default cases has long evinced a strong preference for judgments on the merits. *Id.* at 841 ("Because of our general preference for judgments on the merits, however, 'a "glaring abuse" of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default.'") (quoting *United Coin Meter*, 705 F.2d at 946); *United States v. $22,050.00 United States Currency*, 595 F.3d 318, 322 (6th Cir. 2010) (noting a policy in default cases of favoring judgment on the merits); *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990) ("Trials on the merits are favored in the federal courts."); *Shepard Claims Serv., Inc. v. William Darrah*, 796 F.2d 190, 193 (6th Cir. 1986). Second, given this case's procedural posture, the court must construe all ambiguous or disputed facts in the light most favorable to FlamedXX, and resolve any doubt in FlamedXX's favor. *See INVST Financial Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987). Thus, although the Court views with considerable doubt Thompson's and FlamedXX's accounts of Thompson's conduct with respect to Arch Wood's efforts to serve process on Thompson, the Court must resolve that doubt in

---

[16] Arch Wood offered a short argument that it had suffered prejudice in its response to FlamedXX's motion to set aside default, but ultimately acknowledged "under the controlling law Arch recognizes that the standards are extremely lenient in FlamedXX's favor on the first two factors [prejudice and meritorious defenses] relating to 'good cause'" (Court File No. 20, p. 4).

17

FlamedXX's favor. *Cf. Dassault*, 663 F.3d at 844 ("Our conclusion [to set aside default] is particularly appropriate in light of the precedential directive that '[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.'") (quoting *United Coin Meter*, 705 F.2d at 846)).

The third reason for setting aside default against FlamedXX requires a more extended discussion of some doctrinal confusion in the Rule 55(c) good cause case law. As noted above, a court considers three factors to determine whether to set aside default under Fed. R. Civ. P. 55(c): "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Id.* at 838-39 (quoting *United Coin Meter Co.*, 705 F.2d at 844. Although reliance on these factors in the good cause analysis is well-settled, the proper way to balance them is not. In one line of cases, beginning with *United Coin Meter*, the United States Court of Appeals for the Sixth Circuit has suggested the "decisive issue [is] whether the default resulted from defendant's 'culpable conduct.'" *Shepard Claims Serv.*, 796 F.2d at 192-93 (discussing *United Coin Meter* analysis). Thus, under this approach, a court might find a plaintiff will not be prejudiced by setting aside default and a defendant possesses meritorious defenses, and yet nonetheless determine default should not be set aside if the defendant's conduct was sufficiently culpable. *See, e.g.*, *id.* at 194. To find a defendant sufficiently culpable under these circumstances, a court must conclude a defendant displayed "either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Id.* Because the parties here is essence agreed Arch Wood would not be prejudiced by a set-aside of the default and FlamedXX has sufficiently meritorious defenses, the Magistrate Judge relied on this line of cases when it recommended denying FlamedXX's motion to set aside default after finding "Thompson's conduct showed a lack of respect

18

for his responsibilities as a registered agent for FlamedXX and showed an intent to thwart judicial proceedings" (Court File No. 37, p. 19).

While the analysis just described appears to be the dominant method for deciding set-aside motions under Fed. R. Civ. P. 55(c), a second line of cases calls this analysis into question. This line of cases places greater emphasis on the question of prejudice to the plaintiff and the existence of meritorious defenses available to the defendant. Thus, a Sixth Circuit panel has announced the following rule: "a district court abuses its discretion in denying a motion to set aside an entry of default when two of the three factors have been demonstrated by the defendant: the defendant had a meritorious defense and no prejudice would result to the plaintiff if the matter were to go forward." *O.J. Distributing*, 340 F.3d at 353 (citing *Shepard Claims Serv.*, 796 F.2d at 193-94).[17] Moreover, a recent Sixth Circuit panel has stated that "[o]ur cases make clear that prejudice to the plaintiff and the presence of a meritorious defense are the two most important considerations." *$22,050.00 United States Currency*, 595 F.3d at 324-25. Although the two lines of cases suggesting different points of emphasis suggest that statement is debatable at best, the Sixth Circuit's most recent published decision on Fed. R. Civ. P. 55(c) neither adopted nor discredited it. *See Dassault*, 663 F.3d at 840-44 (conducting three-factor good cause analysis without suggesting any hierarchy among the factors).

In light of these two different approaches to the good cause analysis under Rule 55(c), the

---

[17] In fact, the rule *Shepard Claims Serv.* articulates differs from what *O.J. Distributing* announces. The relevant passage in the former case indicates "[w]hen the first two factors militate in favor of setting aside the entry, it is an abuse of discretion for a district court to deny a Rule 55(c) motion *in the absence of a willful failure of the moving party to appear and plead.*" *Shepard Claims Serv.*, 796 F.2d at 194 (emphasis added). Without explanation, *O.J. Distributing* omits the italicized portion of the rule.

Court believes caution is appropriate in this case. Under the *United Coin Meter* line of cases, the Court must focus on the difficult and contested question of whether FlamedXX, through Thompson, displayed "either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Serv.*, 796 F.2d at 194. The requirement to construe all doubts and ambiguities in FlamedXX's favor renders this decision even more challenging, as does the background policy favoring trials and judgments on the merits. By contrast, under the *O.J. Distributing* line of cases, the Court must set aside default because there is no dispute Arch Wood would not be prejudiced and FlamedXX has advanced meritorious defenses. Rather than formally adopt one line of cases as the proper Rule 55(c) good cause analysis, the Court notes this discrepancy in the case law provides a third reason under the facts of this close case for setting aside the default and allowing the case to go forward.

In light of the strong policy in favor of decision on the merits and the Court's need to resolve all doubt and disputed facts in favor of the defendant, the Court concludes there is a good cause to set aside entry of default against FlamedXX under Fed. R. Civ. P. 55(c). Accordingly, the Court **GRANTS** FlamedXX's second objection and will set aside the entry of default against it.

### C. Imposing Sanctions on FlamedXX

The Court's decision to set aside the entry of default against FlamedXX does not end its analysis. Although the Court concludes the conduct of FlamedXX and Thompson does not justify entry of default, such conduct does warrant sanction. Whether he was acting with the intent to evade service of process (as the Magistrate Judge concluded) or was instead repeatedly negligent in failing to change his address with the Tennessee Secretary or State and check his various mailboxes, Thompson's actions in this case considerably–and needlessly–increased the amount of time and

energy Arch Wood, the Magistrate Judge, and this Court have had to spend on this case. His conduct also increased the amount of monetary resources Arch Wood has been required to spend on the relatively simple aspect of initiating the case through service of process. Accordingly, the Court concludes imposition of monetary sanctions to account for Thompson's conduct is appropriate.

The Sixth Circuit has recognized a district court's inherent power to impose monetary sanctions when setting aside a default under Fed. R. C. P. 55(c). *Shepard Claims Servs.*, 796 F.2d at 195 ("Our disposition of the case [i.e., setting aside default] does not preclude the district court from assessing or determining some appropriate penalty or sanction against the defendant or his counsel for the delay occasioned by the careless and inexcusable conduct of defendant's counsel herein discussed."). A leading treatise on federal procedure explains in more detail the basis for imposing sanctions on the defaulting party when setting aside that default:

> The imposition of conditions as part of granting a Rule 55(c) motion can be used to rectify any prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation. The most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues. These burdens can be eased by requiring the defaulting party to provide a bond to secure costs, to pay court costs, or to cover the expenses of the appeal.

Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, 10A Federal Practice and Procedure, § 2700 (3d ed. 2011). A finding that Arch Wood suffered prejudice in delay and expense sufficient to justify monetary sanctions but insufficient to weigh in its favor in the three-factor good cause analysis is a result of the more stringent prejudice requirement under that Rule 55(c). *See, e.g.*, *Dassault*, 663 F.3d at 842 (noting delay and increased litigation cost do not generally support entry of default).

21

Thus, the Court will grant FlamedXX's motion to set aside default on the condition FlamedXX pay 1) Arch Wood's reasonable attorney's fees and expenses incurred in attempting to obtain service on FlamedXX, both by certified mail and through personal service; 2) Arch Wood's reasonable attorney's fees and expenses incurred in preparing its application for entry of default, its motion for default judgment, and its response in opposition to FlamedXX's motion to set aside default; and 3)Arch Wood's reasonable attorney's fees and expenses incurred in preparing for and attending the February 8, 2012 evidentiary hearing on FlamedXX's motion set aside default. Because the Magistrate Judge has already familiarized himself with the case in considerable detail, the Court will refer to him the determination of the proper amount of attorney's fees FlamedXX must pay to Arch Wood. The Court therefore designates Judge Carter to conduct such evidentiary hearings and enter such a disposition as he deems appropriate pursuant to 28 U.S.C. § 636(b)(3).

IV. **CONCLUSION**

After reviewing the record, the R&R, and the parties' submissions, the Court will **ACCEPT** and **ADOPT** the alternative recommendation provided in the R&R (Court File No. 37). Accordingly, Arch Wood's motion for default judgment (Court File No. 11) will be **DENIED**, and FlamedXX's motion to set aside default (Court File No. 16) will be **GRANTED** with the conditions explained above. An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

22